## STATE OF CONNECTICUT *v.* BRUCE MILLER
## (AC 31340)

DiPentima, C. J., and Robinson and Bear, Js.

Argued February 10—officially released May 10, 2011

*Kirstin B. Coffin,* special public defender, for the appellant (defendant).

*Emily Graner Sexton,* special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy,* state's attorney, and *Vicki Melchiorre,* senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Bruce Miller, appeals from the judgment of conviction, rendered after a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (2), threatening in the second degree in violation of General Statutes § 53a-62 (a) (1) and carrying a dangerous weapon in violation of General Statutes § 53-206 (a). On appeal, the defendant claims that (1) the evidence was insufficient to support his conviction of assault in the second degree and (2) he was denied due process of law as a result of prosecutorial impropriety. We disagree and, accordingly, affirm the judgment of conviction.

The jury reasonably could have found the following facts. On the morning of April 27, 2008, the defendant and his wife, Emily Bassell, had an argument at their home in East Hartford. This argument became physical when the defendant pushed Bassell to the ground. She

then left the apartment, went to her cousin's house and telephoned a friend, Micandre Brown, who told her to wait at a local drugstore where he would pick her up.

At the drugstore, Bassell met Brown, who offered to take her to her mother's home. While waiting for Brown to unlock his motor vehicle for her, Bassell saw the defendant run from the drugstore toward them. Armed with a silver knife with a four to five inch blade, the defendant physically confronted Brown. He repeatedly swung the knife at Brown. During the incident, the defendant threatened to kill Brown. Brown managed to resist the defendant's attack but sustained a one-half inch laceration to his thumb. The defendant fled from the scene and, after being contacted by investigating police officers, went to the police station where he was taken into custody.

Following a jury trial, the defendant was convicted of assault in the second degree, threatening in the second degree and carrying a dangerous weapon. The court sentenced the defendant to a total effective term of five years incarceration, suspended after three years, and five years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the evidence was insufficient to sustain his conviction of assault in the second degree. Specifically, he argues that the state presented insufficient evidence that he caused injury to Brown. The state counters that there was "ample evidence from which the jury could have found beyond a reasonable doubt that the defendant caused Brown's injury." We agree that there was sufficient evidence to support the defendant's conviction of assault in the second degree.

We begin our analysis by setting forth our standard of review. "In reviewing the sufficiency of the evidence

to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the [finder of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical . . . to conclude that a basic fact or an inferred fact is true, the [fact finder] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of

the evidence that supports the [finder of fact's] verdict of guilty. . . .

"Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the [finder] of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Pettigrew*, 124 Conn. App. 9, 30–31, 3 A.3d 148, cert. denied, 299 Conn. 916, 10 A.3d 1052 (2010); see also *State* v. *Calabrese*, 279 Conn. 393, 402–403, 902 A.2d 1044 (2006).

Section 53a-60 (a) provides: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm . . . ." The defendant challenges only the element of causing a physical injury to another person. See *State* v. *Stavrakis*, 88 Conn. App. 371, 389, 869 A.2d 686, cert. denied, 273 Conn. 939, 875 A.2d 45 (2005).

In the present case, Bassell testified that the defendant ran toward the vehicle and started swinging a knife at Brown. Bassell saw the defendant make contact with Brown, and then she saw blood on the window of the vehicle from Brown's having been cut. Brown testified that the defendant attempted to stab him in the chest. Brown stated that he was cut during the incident, but he did not realize it during the struggle with the defendant. Afterward, he noticed blood on the ground, the driver's seat and the passenger window of his motor vehicle. Brown further stated that he had received a one-half inch cut on his thumb. Last, Salvatore Dicello, an employee of the East Hartford fire department, testified

that he had treated Brown's lacerated thumb with antibiotic ointment and a bandage, and that the wound was not actively bleeding by the time he had arrived.

Given this evidence, the jury reasonably could have concluded that during the struggle, Brown received a laceration on his thumb from the knife wielded by the defendant. Accordingly, we conclude that defendant's conviction of assault in the second degree was supported by sufficient evidence.

## II

The defendant next claims that he was denied due process of law as a result of prosecutorial impropriety. Specifically, he argues that comments made by the prosecutor during rebuttal closing argument were improper and amounted to a denial of due process. We disagree.

During rebuttal closing argument, the prosecutor made the following statements to the jury: "You view the testimony of [the defendant] . . . with the proper focus. This man knows the system, he knows how to play the game, he knows how he has to present himself on the witness stand to try and convince you folks that he's telling the truth and not the other witnesses in this case. I submit to you that the credibility of the other witnesses was clear and should convince you that the state has proven all of these counts beyond a reasonable doubt. Please return guilty verdicts, ladies and gentlemen. Thank you."

The court excused the jury, and the defendant raised an objection to the state's comments. Specifically, he stated: "That the defendant knows the system and knows how to play the game. I object to that—to those comments. They're inflammatory. They're facts that are not in evidence." The prosecutor stated that the basis for her comment was the evidence that the defendant was a six time convicted felon and that therefore he

knows how to play the system. After further argument, the court stated that it would address the issue with the jury.

During the jury instructions, the court addressed the comments made by the prosecutor to which the defendant had objected. "Now, the next part of this instruction is not written because it's in response to what just occurred during the argument. We don't try people in Connecticut on the quote, bad man theory. Prior convictions for property crimes go only to the credibility of the witness and provide no proof of this defendant's violent tendencies or lack of them, nor do they display any special ability to, quote, game the system, unquote. That comment that was made is stricken."[1]

On appeal, the defendant argues that there was no evidence to suggest that he had any special knowledge of "the system" or "how to the play the game . . . ."[2] He further claims that the comment implied that he was lying to the jury. The state counters that, assuming such comments are improper, the defendant was not denied due process because there is no reasonable likelihood that the jury's verdict would have been different absent these comments.

"Prosecutorial [impropriety] claims invoke a two step analysis. First, the reviewing court must determine whether the challenged conduct did, in fact, constitute [an impropriety]. Second, if [an impropriety] occurred, the reviewing court must then determine if the defendant has demonstrated substantial prejudice. . . . In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the [impropriety] so infected the trial with

---

[1] At trial, the defendant did not raise any objection to the curative instruction.

[2] At oral argument before this court, the defendant expressly stated that his only claim of prosecutorial impropriety was related to these comments.

unfairness as to make the conviction a denial of due process. . . .

"Because the claimed prosecutorial [impropriety] occurred during closing arguments, we advance the following legal principles. [P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [an impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Citation omitted; internal quotation marks omitted.) *State* v. *Gilbert I.*, 106 Conn. App. 793, 799–800, 944 A.2d 353, cert. denied, 287 Conn. 913, 950 A.2d 1289 (2008); see also *State* v. *D'Haity*, 99 Conn. App. 375, 383–84, 914 A.2d 570, cert. denied, 282 Conn. 912, 924 A.2d 137 (2007).

In light of the state's assumption that the trial court properly determined that the comments were improper, we address the second prong of the prosecutorial impropriety test, that is, whether the comments of the prosecutor amount to a denial of due process. "An appellate court's determination of whether any improper conduct by the prosecutor violated the defendant's right to a fair trial is predicated on the factors established in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). Those factors include the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the

case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Souza*, 125 Conn. App. 529, 535, 8 A.3d 1131 (2010); see also *State* v. *Outing*, 298 Conn. 34, 80, 3 A.3d 1 (2010), cert. denied, U.S. , 131 S. Ct. 1479, 179 L. Ed. 2d 316 (2011).

The state concedes that (1) the defendant did not invite the impropriety, (2) the defendant objected to the comments[3] and (3) the centrality of the comments related to a critical issue in the case, and, therefore, these factors weigh in favor of the defendant. We note that the comments occurred only once and, therefore, were not frequent. See, e.g., *State* v. *Fauci*, 282 Conn. 23, 51, 917 A.2d 978 (2007); see also *State* v. *Jarrett*, 82 Conn. App. 489, 505, 845 A.2d 476, cert. denied, 269 Conn. 911, 852 A.2d 741 (2004). Likewise, the isolated comments regarding the defendant's credibility were not severe. There was evidence of the defendant's criminal history, and we note that the court instructed the jury that it was the sole judge of the facts and credibility of witnesses.

Furthermore, the court issued a specific curative instruction shortly after the prosecutor's comments.[4] In *State* v. *Camacho*, 282 Conn. 328, 385, 924 A.2d 99, cert. denied, 552 U.S. 956, 128 S. Ct. 388, 169 L. Ed. 2d 273 (2007), our Supreme Court stated that "[w]e have previously recognized that a prompt cautionary instruction to the jury regarding improper prosecutorial

---

[3] In *State* v. *Thompson*, 266 Conn. 440, 479, 832 A.2d 626 (2003), our Supreme Court observed that in determining whether a comment was severe, "we consider it highly significant that defense counsel failed to object to any of the improper remarks . . . ."

[4] "We note . . . that a general instruction does not have the same curative effect as a charge directed at a specific impropriety, particularly when the misconduct has been more than an isolated occurrence." (Internal quotation marks omitted.) *State* v. *Warholic*, 278 Conn. 354, 401, 897 A.2d 569 (2006). The court's instruction in the present case was directed at a specific and isolated comment by the prosecutor, thereby strengthening its curative effect.

remarks or questions can obviate any possible harm to the defendant. . . . Moreover, [i]n the absence of an indication to the contrary, the jury is presumed to have followed [the trial court's] curative instructions." (Internal quotation marks omitted.) See also *State* v. *James G.*, 268 Conn. 382, 420, 844 A.2d 810 (2004). Finally, the state's case was strong; both Bassell and Brown testified as to their observations of the assault. There was testimony regarding the medical treatment received by Brown. After considering the challenged comments in light of the factors delineated in *Williams*, we conclude that the defendant was not deprived of a fair trial. See *State* v. *Jarrett*, supra, 82 Conn. App. 505 ("[a]lthough certain remarks made by the prosecutor, from hindsight, may be deemed imprudent, such isolated and brief episodes as occurred here fail to implicate the denial of the defendant's constitutional right to due process" [internal quotation marks omitted]).

The judgment is affirmed.

In this opinion the other judges concurred.